IN THE ~~DISTRICT~~/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Faulkner Walsh Constructors; H2W
Constructors, Inc. and Foundation Svcs, Inc
                Plaintiff(s),

vs.

National Casualty Co.; Atlantic Specialty
Ins. Co., AGCS Marine Ins. Co. and Zurich
American Insurance Co., Defendant(s).

)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3AN- 20- 07949 CI.

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant:   NATIONAL CASUALTY COMPANY

You are hereby summoned and required to file with the court a written answer to the complaint
which accompanies this summons. Your answer must be filed with the court at 825 W. 4th
Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In
addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if
unrepresented) William H. Ingaldson/Peter A. Sandberg, Barry Kell , whose address is:
813 W. Third Avenue, Anchorage, Alaska 99501 .

If you fail to file your answer within the required time, a default judgment may be entered
against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in
this case, in writing, of your current mailing address and any future changes to your mailing
address and telephone number. You may use court form *Notice of Change of Address /
Telephone Number* (TF-955), available at the clerk's office or on the court system's website at
https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you
have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☒ This case has been assigned to Superior Court Judge   Lamoureux   .
    and to a magistrate judge.

☐ This case has been assigned to District Court Judge _____ .

CLERK OF COURT

9/14/2020
Date

By: _____
              Deputy Clerk

I certify that on 9/14/2020 a copy of this Summons was ☐ mailed ☒ given to
☐ plaintiff ☒ plaintiff's counsel along with a copy of the
☐ Domestic Relations Procedural Order ☐ Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _____

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If
you have been served with this summons outside the United States, you also have 40 days to
file your answer.

CIV-100 ANCH (18/19) (cs) 00270-HRH   Document 1-1   Filed 10/20/20   Page 1 of 62 (c), 55
SUMMONS
                                     Exhibit A; Page 1 of 62

William H. Ingaldson
Peter A. Sandberg
Ingaldson Fitzgerald, P.C.
813 West 3rd Avenue
Anchorage, AK 99501
Telephone (907) 258-8750
Email bill@impc-law.com
Email peter@impc-law.com\
Attorneys for Plaintiffs

Barry J. Kell
Kell & Associates, P.C.
813 West 3rd Avenue
Anchorage, AK 99501
Telephone (907) 279-3511
Email kell.barry.ak.@gmail.com

Attorneys for Plaintiffs

**COPY**
Original Received

SEP 1 4 2020

Clerk of the Trial Courts

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

FAULKNER WALSH
CONSTRUCTORS; H2W
CONSTRUCTORS, INC.; and
FOUNDATION SERVICES, INC.,

     Plaintiffs,

    v.

NATIONAL CASUALTY COMPANY;
ATLANTIC SPECIALTY INSURANCE
COMPANY; AGCS MARINE
INSURANCE COMPANY; and ZURICH
AMERICAN INSURANCE COMPANY,

     Defendants.

**COMPLAINT**

Case No. 3AN-20- 07949 CI

**INGALDSON
FITZGERALD,
P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

Plaintiffs Faulkner Walsh Constructors, H2W Constructors, Inc., and Foundation Services, Inc. (collectively "Plaintiffs"), through counsel Ingaldson Fitzgerald, P.C., for their Complaint against defendants National Casualty Company, Atlantic Specialty Insurance Company, AGCS Marine Insurance Company, and Zurich American Insurance Company (collectively "Defendants"), hereby state and allege as follows:

## Parties.

1. Faulkner Walsh Constructors is a partnership whose partners are HSW Constructors, Inc and Foundation Services, Inc., with its principal place of business in Bethel, Alaska, and is in all respects competent to bring this Complaint.

2. H2W Constructors, Inc., is a corporation organized under the laws of the State of Alaska, with its principal place of business in Anchorage, Alaska, and is in all respects competent to bring this Complaint.

3. Foundation Services, Inc., is a corporation organized under the laws of the State of Alaska, with its principal place of business in Bethel, Alaska, and is in all respects competent to bring this Complaint.

4. On information and belief, National Casualty Company is an Ohio corporation with its principal place of business in the State of Arizona, and is engaged in the business of insurance.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

5.      On information and belief, Atlantic Specialty Insurance Company is a New York corporation with its principal place of business in the State of Minnesota, and is engaged in the business of insurance.

6.      On information and belief, AGCS Marine Insurance Company is an Illinois corporation with its principal place of business in the State of Illinois, and is engaged in the business of insurance.

7.      On information and belief, Zurich American Insurance Company is an Illinois corporation with its principal place of business in the State of Illinois, and is engaged in the business of insurance.

## Jurisdiction and Venue.

8.      This court has jurisdiction pursuant to AS 22.10.020.

9.      Venue is proper because the events giving rise to Plaintiffs' claims occurred in Bethel, Alaska.

## General Allegations.

10.     Defendants issued a marine insurance policy, Policy Number GIS-12-080-HP, to Faulkner Walsh Constructors, Including Subsidiaries, And/or Affiliated/ Associated Companies, as the named "Assured," for the period June 1, 2012 to June 1, 2013 ("Policy"). A true and correct copy of the Policy is attached as Exhibit 1.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

11.     On or about October 3, 2012, the DELTA CHIEF, a 175-foot long steel barge owned by Plaintiffs, was being towed on the Kuskokwim River from Aniak to Bethel, Alaska by the tug FRANCIS SNOW, also owned by Plaintiffs.

12.     The captain and crew of the FRANCIS SNOW anchored the DELTA CHIEF for the night in the Kuskokuak Slough ("Slough"), a branch of the Kuskokwim River near Bethel, Alaska.  Acting against reasonable advice, the captain decided to anchor in approximately 30 feet of water in spite of the fact that a storm was coming in. During the night, winds and waves picked up.  Water entered the DELTA CHIEF through an inadvertently opened hatch on the deck, causing the DELTA CHIEF to sink.

13.     If the captain had not ignored the reasonable advice to anchor for the night at a shallower location, the Delta Chief would not have sunk and would have made it safely back to Bethel, Alaska.

14.     At the time of its sinking, the DELTA CHIEF was listed as a vessel specifically covered under the Protection & Indemnity coverage of the Policy.

15.     The State of Alaska ("State") owns the submerged lands underneath the waters comprising the Slough ("Lands").

16.     When the DELTA CHIEF sank, it became grounded on the Lands. Efforts to remove the vessel were unsuccessful, and it has remained grounded on the Lands since October 4, 2012.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

17. On November 3, 2016, the State filed suit against Plaintiffs in the Superior Court at Anchorage, seeking damages and injunctive relief arising from the sinking of the DELTA CHIEF, Case No. 3AN-16-09863 CI ("Underlying Lawsuit"). A copy of the State's complaint in the Underlying Lawsuit is attached as Exhibit 2. Venue for the Underlying Lawsuit subsequently was transferred to Bethel, Alaska, and the case was given a new number, Case No. 4BE-17-00064 CI.

18. Plaintiffs tendered the Underlying Lawsuit to Defendants for defense and indemnity pursuant to the Policy.

19. By letter dated September 15, 2017, Defendants, through counsel, denied Plaintiffs' claim for coverage under the Policy with respect to all of the State's claims asserted in the Underlying Lawsuit, including denial of any duty to defend any of the Plaintiffs and denial of any duty to indemnify any of the Plaintiffs for any damages or other relief that might be granted against them. A copy of the September 15, 2017 coverage denial letter is attached as Exhibit 3.

20. Defendants failed and refused to defend any of the Plaintiffs against the State's claims in the Underlying Lawsuit.

21. A bench trial in the Underlying Lawsuit took place in December 2019. Following trial, the court issued Findings of Fact and Conclusions of Law, a copy of which is attached as Exhibit 4.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska ·
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

22.     The trial court found that the captain of the FRANCIS SNOW failed to follow the recommendations of the pilot for the vessel in choosing the location and manner of anchoring the DELTA CHIEF, and that the captain's failure to follow the pilot's recommendations for anchoring caused the DELTA CHIEF to sink.

23.     The trial court concluded that the captain's failure to follow reasonable precautions while anchoring the DELTA CHIEF prior to its sinking constituted negligence on the part of Plaintiffs. The court also concluded that Plaintiffs' negligence caused monetary damages to the State. The court awarded compensatory damages against Plaintiffs and in favor of the State in the principal amount of $4,234,414.00, as well as pre and post-judgment interest, attorneys' fees, and costs.

24.     The State's Complaint in the Underlying Lawsuit stated allegations and claims that, if true, would have been within the coverage afforded to the Plaintiffs under the Policy.

25.     The actual facts as found by the court in the Underlying Lawsuit confirm that the claims asserted by the State against the Plaintiffs were within the coverage afforded to the Plaintiffs under the Policy.

26.     Defendants breached duties owed to the Plaintiffs by failing to defend and otherwise provide coverage to Plaintiffs under the Policy with respect to the Underlying Lawsuit.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

## COUNT I

### Breach of Contract.

27. Plaintiffs reallege and incorporate by reference the allegations contained in preceeding paragraphs of this Complaint.

28. The Policy is a contract between Plaintiffs and Defendants under which Defendants are obligated to defend Plaintiffs as to potentially covered claims asserted against them and to indemnify Plaintiffs as to covered damages awarded against them.

29. Defendants breached the contract by failing to defend Plaintiffs against the State's claims in the Underlying Lawsuit.

30. Defendants also committed other breaches of the contract, including but not limited to failing to reasonably and properly investigate the claims against Plaintiffs and potential coverage under the Policy, failing to adjust the claims against Plaintiffs, failing to pay the cost of removing the wreck of the DELTA CHIEF from the Lands, and failing to settle and/or indemnify Plaintiffs as to the claims and damages sought by the State in the Underlying Lawsuit.

31. Because Defendant's breached their duty to defend Plaintiff's, they are estopped as a matter of law from denying coverage under the policy.

32. Defendants' breach of their contract with Plaintiffs has caused damage to plaintiff's in an amount in excess of $4,000,000.

**INGALDSON
FITZGERALD,
P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

## COUNT II

### Breach of the Covenant of Good Faith and Fair Dealing

33. Plaintiffs reallege and incorporate by reference the allegations contained in preceeding paragraphs of this Complaint.

34. The Policy, like all contracts, includes an implied covenant of good faith and fair dealing.

35. Defendants breached the implied covenant of good faith and fair dealing by, among other things, failing to defend Defendants in the underlying matter, failing to reasonably and properly investigate the claims against Plaintiffs and potential coverage under the Policy, failing to adjust the claims against Plaintiffs, failing to pay the cost of removing the wreck of the DELTA CHIEF from the Lands, and failing to settle and/or indemnify Plaintiffs as to the claims and damages sought by the State in the Underlying Lawsuit.

36. Defendants' breach of the covenant of good faith and fair dealing caused Plaintiffs to incur damages in an amount in excess of $4,000,000.

37. Defendants' conduct in breaching of the covenant of good faith and fair dealing was reckless and/or outrageous, entitling Plaintiffs to an award of punitive damages against Defendants.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

## COUNT III

### Bad Faith

38.     Plaintiffs reallege and incorporate by reference the allegations contained in preceeding paragraphs of this Complaint.

39.     Defendants' failure to reasonably and properly investigate the claims against Plaintiffs and potential coverage under the Policy and to defend Plaintiffs constituted bad faith justifying the award of exemplary damages.

### Prayer for Relief.

WHEREFORE, having stated their Complaint against Defendants, Plaintiffs pray for relief as follows:

1.     Compensatory economic damages in an amount in excess of $4,000,000;

2.     Exemplary damages;

3.     Reasonable costs, interest and attorney fees.

4.     Such other and further relief as the Court deems appropriate.

//

//

//

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT

DATED this 11th day of September, 2020 at Anchorage, Alaska.

INGALDSON FITZGERALD, P.C.
Attorne           y for Plaintiffs

By

William H. Ingaldson
Alaska Bar No.: 8406030

INGALDSON FITZGERALD, P.C.
Attorney for Plaintiffs

By

Peter A. Sandberg
Alaska Bar No.: 0611084

KELL & ASSOCIATES, P.C.
Attorney for Plaintiffs

By

Barry J. Kell
Alaska Bar No.: 8611120

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*FAULKNER WALSH CONSRUCTORS, ET AL. V. NATIONAL CASUALTY COMPANY, ET AL.*
3AN-20-_____ CI
COMPLAINT



---

### POLICY #GIS-12-080-HP

---

**Coverage:**     **HULL & MACHINERY and PROTECTION & INDEMNITY**

**Assured:**     Faulkner Walsh Constructors
Including Subsidiaries, And/or Affiliated/Associated Companies
P.O. Box 233929
Anchorage, AK 99523

**Period:**     June 1, 2012 12:01 a.m., Pacific Standard Time to
June 1, 2013 12:01 a.m., Pacific Standard Time

**Vessels:**
1) **"War Horse"** 1970 Tug
2) **"Frances Snow"** 1957 Tug
3) **"David Nook"** 1970 Freight Barge
4) **"Cornell #10"** 1940 Freight Barge
5) **"Afognak 22"** 1946 Freight Barge
6) **"Delta Viking"** (Ex. "ZB-19") 1963 Barge
7) **"Delta Chief"** Circa 1963 Barge
8) **"Mac"** 1993 Push Boat
9) **"Centaur"** (Ex. "Chena") 1945 (rebuilt 1959/1978) Steel Tug

**Sum Insured:**     <u>Hull & Machinery</u>
1) $300,000 – "War Horse"
2) $220,000 – "Frances Snow"
9) $130,000 – "Centaur"
No other vessels covered for Hull & Machinery coverage

**Limit of
Liability:**     <u>Protection & Indemnity</u>
$1,000,000 any one accident or occurrence, **each vessel**

**Deductibles:**     <u>Hull & Machinery</u>, each occurrence
1) $9,000 – "War Horse"
2) $6,600 – "Frances Snow"
9) $5,000 – "Centaur"

A MEISENBACH COMPANY
1325 Fourth Avenue, Suite 2100 Seattle, Washington 98101
www.mcmnw.com
dba Pacific Insurance Services LLC in CA #0F53689

**Deductibles:**
**(continued)**

Protection & Indemnity
$10,000  all P&I claims, each & every claim ___except___
$20,000  *as respects claims for Primary Collision, Sue & Labor, General Average, Salvage and Removal of Wreck as respects the vessels "David Nook", "Cornell #10", "Afognak 22", "Delta Viking", "Delta Chief" and "Mac" *only*.

*Excess Collision, Excess Sue & Labor, Excess General Average, Salvage and Removal of Wreck provided in excess of the Hull & Machinery sum insured as respects the "War Horse", "Frances Snow" and "Centaur". Primary coverages as respects the "War Horse", "Frances Snow" and "Centaur" provided as per the Pacific Coast Tug & Barge Form wording.

**Conditions:**

Pacific Coast Tug & Barge Form
Protection & Indemnity SP-38
- Including Excess Collision Liability
- Including Excess General Average, Salvage & Removal of Wreck
- Including Excess Sue & Labor Expenses
- P&I SP 38 Lines 60 – 62 specifically amended to *include Primary* Collision, *Primary* General Average, Salvage and *Primary* Sue & Labor Expenses as respects "David Nook", "Cornell #10", "Afognak 22", "Delta Viking", "Delta Chief" and "Mac" (after applicable deductible is met). These coverages are Primary and *not* in excess of hull values. Please see attached Manuscript Endorsement #1 for further policy terms in this regard.

Institute Radioactive Contamination Exclusion Clause CL.356
Institute Cyber Attack Exclusion Clause CL.380
Fleet Policy Clause
G.I.S. Broker's Cancellation Clause
Maritime Lien for Unpaid Premium and Commission
Pollution Exclusion Clause
American Institute S.R.C.C. (9.8.59)
Automatic Acquisition Clause
Punitive Damage Exclusion
U.S. Economic & Trade Sanctions Clause
AIMU Chemical, Biological, Bio-Chemical and Electromagnetic Exclusion
Occupational Disease Exclusion
Asbestos Exclusion
Alaska Rule 82 (Combined B & C Form)
Manuscript Endorsement #1
Absolute Terrorism Exclusion Clause
Following Clause

A MEISENBACH COMPANY
1325 Fourth Avenue, Suite 2100 Seattle, Washington 98101
www.mcmw.com
Case 3:20-cv-00270-HRH    Document 1-1    Filed 10/20/20    Page 13 of 62
Exhibit A Page 13 of 62

**Lay-Up Period:** Lay-Up Period from October 15th to May 15th for "War Horse", "Frances Snow", "Centaur" and "Delta Chief".

Annual Port Risk for "Cornell #10", "Afognak 22", "David Nook", "Delta Viking" and "Mac".


**Navigation Warranty:** "War Horse", "Frances Snow", "Centaur", and "Delta Chief"
Coastal and Inland Waters of Western and Central Alaska, including Nome to Cook Inlet, and including Yukon, Kuskokwim River System, and/or held covered.

"Cornell #10", "Afognak 22", "David Nook", "Delta Viking" and "Mac"
***Annual Port Risk Coverage*** restricted to within twenty-five (25) miles of Bethel Alaska for maintenance, fueling and hauling out only. These vessels will not be used for actual operations.


**Crew:** Warranted not to exceed five (5) crew at any one time, all vessels combined.

**Information:** Recommendation compliance letters to be completed/signed with regard to the "Frances Snow", "Delta Chief" and "Centaur" prior to these vessels operating.
With regard to the "Delta Chief" – confirmation that the hull is watertight via signed recommendation letter, survey addendum, letter or email from the original surveyor, Jack McFarland, will be deemed acceptable in lieu of the recommendation to dry dock this vessel.

**Rates:** Hull & Machinery
1) 4.73%
2) 2.50%
9) 2.50%

Protection & Indemnity
$2,625.00 vessel charge, for each of the vessels "War Horse", "Frances Snow" and "Centaur"

$1,732.50 vessel charge, for each of the vessels "Delta Viking", "David Nook", "Delta Chief", "Cornell #10", "Afognak 22" and "Mac"

$6,300.00 crew charge, per crew

Case 3:20-cv-00270-HRH Document 1-1 Filed 10/20/20 Page 14 of 62

Exhibit A, Page 14 of 62
EXHIBIT 1

**Premium:**
H&M: $ 22,940
P&I: $ 49,770
$ 72,710 **TOTAL**

**SECURITY:** *The subscribers hereto, severally, not jointly, do hereby cause to be insured for the amount or percentage set opposite their respective names:*

| Company | Policy # | % | Premium | Authorized Signature of Insurers |
|---|---|---|---|---|
| National Casualty Company through International Specialty | OMO 0013540 | 50% | H&M $11,470.00 P&I $24,885.00 | |
| Atlantic Specialty Insurance Company through International Marine Underwriters | B5JH82631 | 25% | H&M $ 5,735.00 P&I $12,442.50 | |
| AGCS Marine Insurance Company | OHL92003216 | 15% | H&M $ 3,441.00 P&I $ 7,465.50 | |
| Zurich American Insurance Company | MH5843701-04 | 10% | H&M $ 2,294.00 P&I $ 4,977.00 | |
| **Total Sum Insured** | | **100%** | **$72,710.00** | |

*Note: It is noted and agreed that Global Insurance Specialists, LLC signs this binder and/or policy as Broker of the Assured; not agent of the companies subscribed hereto.*

Dated at Seattle, Washington
This 17th Day of October 2012

By: _____
MCM, A Meisenbach Company

A MEISENBACH COMPANY
1325 Fourth Avenue, Suite 2100 Seattle, Washington 98101
www.mcmaw.com

## MANUSCRIPT ENDORSEMENT #1

With respects to the following listed vessel, Protection & Indemnity insurance provided by this policy is extended to indemnify the Assured for all sums which the Assured may become obligated to pay for liabilities under the Collision and Towers' Liability Clause, General Average and Salvage Clause, and the Sue and Labor Clause contained in the Pacific Coast Tug/Barge Form (1979). But this insurance is warranted free from claims hereunder unless claims in respect of any one loss, accident or occurrence exceed the below listed "Hull Insured Value", but not in excess of the below listed "Limit of Liability Any One Loss or Occurrence".

| Vessel Name | Hull Insured Value | Limit of Liability Any One Loss or Occurrence |
|---|---|---|
| "War Horse" | $300,000 | $700,000 |
| "Frances Snow" | $220,000 | $780,000 |
| "Centaur" | $130,000 | $870,000 |

Further, as respects "David Nook", "Cornell #10", "Afognak 22", "Delta Viking", "Delta Chief" and "Mac" only, lines 60-62 of the Protection & Indemnity form SP-38 are deleted.

With respects to the below listed vessels, Protection & Indemnity insurance provided by this policy is extended to indemnify the Assured for all sums which the Assured may become obligated to pay for liabilities under the Collision and Towers' Liability Clause, General Average and Salvage Clause, and the Sue and Labor Clause contained in the Pacific Coast Tug/Barge Form (1979) (even in the absence of Hull & Machinery coverage for these vessels). But this insurance is warranted free from claims hereunder unless claims in respect of any one loss, accident or occurrence exceed the below listed "Deductible", but not in excess of the below listed "Limit of Liability Any One Loss or Occurrence".

| Vessel Name | Deductible | Limit of Liability Any One Loss or Occurrence |
|---|---|---|
| "David Nook" | $20,000 | $980,000 |
| "Cornell #10" | $20,000 | $980,000 |
| "Afognak 22" | $20,000 | $980,000 |
| "Delta Viking" | $20,000 | $980,000 |
| "Delta Chief" | $20,000 | $980,000 |
| "Mac" | $20,000 | $980,000 |

A MEISENBACH COMPANY
1325 Fourth Avenue, Suite 2100 Seattle, Washington 98101
www.mcnow.com
dba: Backe Pacific Insurance Services, LLC CA Lic #0F82099

EXHIBIT 1
Exhibit A; Page 16 of 62

## PACIFIC COAST TUG/BARGE FORM (1979)

To be attached to and form a part of Policy __As Declared__ _____ of the

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

### ASSURED
1     This Policy insures __As Declared__ _____
2     _____ hereinafter referred to as the Assured
3     This Policy also covers the affiliated, subsidiary and interrelated companies of the Assured in whatever capacity, and Underwriters
4     waive any right of subrogation against such companies of the Assured, provided that such waiver shall not apply in the event of a
5     collision between the Vessel and any vessel owned, demise, chartered or otherwise controlled by any of the aforesaid companies, or with
6     respect to any loss, damage, expense or liability against which such companies are insured.
7     If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a
8     greater extent than would the Owner, had claim been made by the Owner as an Assured named in this Policy.

### LOSS PAYEE
9     Loss, if any payable to __As Declared__ _____
10     _____ or order.
11     Provided, however, Underwriters shall pay claims to others as set forth in the Collision and Tower's Liability clause and may make
12     direct payment to persons providing security for the release of the Vessel in Salvage cases.

### VESSEL
13     The Subject Matter of this insurance is the Vessel called the __As Declared__ _____
14     or by whatsoever name or names the said Vessel shall be called, which for purposes of this insurance shall consist of and be limited to
15     her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers,
16     refrigerating machinery, insulation, motor generators and other electrical machinery.
17     In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured or any
18     of its affiliated, subsidiary or interrelated companies has assumed liability therefor, it shall also be considered part of the Subject
19     Matter and the aggregate value thereof shall be included in the Agreed Value.
20     Notwithstanding the foregoing, cargo containers shall not be considered a part of the Subject Matter of this insurance.
21     In the event that more than one Vessel is insured by this Policy, all of these clauses shall apply as though a separate policy had
22     been issued with respect to each Vessel.

### DURATION OF RISK
23     From the _____ day of _____ 19_____, __As Declared__ _____ time
24     to the _____ day of _____ 19_____ __As Declared__ _____ time.
25     Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided
26     previous notice be given the Underwriters, be held covered at a pro rata monthly premium to her port of destination.
27     In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate

### TRADING WARRANTY
28     Held covered in case of any breach of the warranties in this clause, provided:
29     (a) such event occurs without the actual privity or prior knowledge of any owner or Assured, and
30     (b) the Assured give immediate notice of such event to Underwriters upon becoming aware thereof, and pay additional premium
31     as required.

### DEDUCTIBLE
32     Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims
33     under the Sue and Labor clause and claims under the Collision and Tower's Liability clause) arising out of each separate accident, the
34     sum of __As Declared__ _____ unless the accident results in a Total Loss
35     of the Vessel in which case this clause shall not apply. A recovery from other interests, however, shall not operate to exclude claims under this Policy
36     provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceed that sum For the purpose of this clause
37     each accident shall be treated separately, but is it agreed that (a) a sequence of damages arising from the same accident shall be treated as due to that
38     accident and (b) all heavy weather damage, or damage caused by contact with floating ice (if otherwise covered hereunder, which occurs during a single
39     sea passage between two successive ports shall be treated as though due to one accident.

### AGREED VALUE
40     The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at
41     __As Declared__ _____ Dollars.

### AMOUNT INSURED HEREUNDER
42     __As Declared__ _____ Dollars

### PREMIUM
43     The Underwriters to be paid in consideration of this insurance __As Declared__ _____
44     Dollars being at the annual rate of __As Declared__ _____ per cent, which premium shall be due on attachment If the Vessel is insured under this
45     Policy for less than one year at pro rata of the annual rate, full annual premium shall be considered earned and immediately due and
46     payable in the event of Total Loss of the Vessel

### RETURNS OF PREMIUM
47     Premium returnable as follows·
48     Pro rata daily in the event of termination under the Change of Ownership clause;
49     Pro rata daily if the Policy be cancelled by the Underwriters; Short rate will be charged if the Policy be cancelled by the Assured
50     __As Declared__ _____ cents per cent net for each period of 30 consecutive days the Vessel may be laid up in port without cargo on board,
51     out of commission and not under repair for Underwriters account,
52     provided always that:
53     (a) from all cancellation or termination return premiums the same percentage of deduction (if any) shall be made as was allows by the Underwriters
54     on receipt of the original premium;
55     (b) a Total Loss of the Vessel has not occurred during the currency of this Policy,
56     (c) in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly
57     If the Vessel is laid up (as defined above) for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay
58     such proportion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed 30

59 consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return in recoverable.

## CANCELLATION BY NOTICE

60     This Policy may be cancelled either by the Underwriters or by the Assured giving 15 days' written or telegraphic notice to the other Underwriters' notice
61     may be sent to the Assured's last known address or in care of the broker who negotiated this Policy. In the event of Total Loss of the Vessel occurring prior
62     to any cancellation or termination of this Policy, full annual premium shall be considered earned.

## ADVENTURE

63     Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or
64     at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, subject to all the terms, conditions
65     and warranties of this Policy.

## PERILS

66     Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas,
67     Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at
68     Sea, Arrests, Restraints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners
69     and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting,
70     however, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon

## ADDITIONAL PERILS (INCHMAREE)

71     This Policy also covers loss of or damage to the Vessel directly caused by either.
72     (a) breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any
73     latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part)
74                           or
75     (b) other causes of whatsoever nature arising either on shore or otherwise
76     provided the loss or damage arising from those causes set forth in either (a) or (b) has not resulted from want of due diligence by the Assured, the
77     Owners or Managers of the Vessel, or any of them.

## COLLISION AND TOWER'S LIABILITY

78     And it is further agreed that if the Vessel and/or her tow shall come into collision with any other ship or vessel. and the Assured and/or any of its
79     affiliated and/or subsidiary and/or interrelated companies in consequence thereof or the Surety for any or all of them in consequence of its undertaking
80     shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, Underwriters will
81     pay the Assured and/or any of its affiliated and/or subsidiary and/or interrelated companies or the Surety, whichever shall have paid, such proportion of such
82     sum or sums so paid as their subscriptions hereto bear to the Agreed Value of the Vessel, provided always that their liability in respect of any one such
83     collision shall not exceed their proportionate part of the Agreed Value of the Vessel
84     And it is further agreed that this Policy shall also cover the liability of the Vessel from any collision and/or grounding and/or stranding and/or loss or
85     damage which may occur to any vessel or vessels or craft or their cargo and/or freight while in tow of said Vessel, subject to all the terms and conditions of
86     the above clause
87     And it is further agreed that if the Vessel and/or her tow shall come into collision or contact with any structure, floating or otherwise, or with any
88     substance or thing other than water, or shall cause any other ship, vessel or craft to strand, ground, collide or come into contact with any substance or thing
89     other than water, and the Assured and/or any of its affiliated and/or subsidiary and/or interrelated companies in consequence thereof or the Surety for any or
90     all of them in consequence of its undertaking shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums
91     in respect of any such accident, Underwriters will pay the Assured and/or any of its affiliated and/or subsidiary and/or interrelated companies or the Surety,
92     whichever shall have paid, such proportion of such sum or sums so paid as their subscriptions hereto bear to the Agreed Value of the Vessel, provided
93     always that their liability in respect of any one such accident shall not exceed their proportionate part of the Agreed Value of the Vessel
94     In cases where the liability of the Vessel and/or her tow has been contested, or proceedings have been taken to limit liability , with the consent in writing
95     of a majority (in amount) of the Underwriters on the Hull. Underwriters will also pay a like proportion of the costs and/or expenses which the Assured and/or
96     any of its affiliated and/or subsidiary and/or interrelated companies shall thereby incur, or be compelled to pay; but in case of collision between two vessels
97     when both vessels are to blame, then unless the liability of the Owners and/or Charterers and/or Operators and/or Lessees of one or both of such vessels
98     become limited by law. claims under this clause shall be settled on the principle of cross-liabilities as if the Owners and/or Charterers and/or Operators
99     and/or Lessees of each vessel had been compelled to pay to the Owners and/or Charterers and/or Operators and/or Lessees of the other such vessel such
100    proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured and/or any of its
101    affiliated and/or subsidiary and/or interrelated companies in consequence of such collision.
102    It is hereby further agreed that the principles involved in the above clauses shall apply to the case where two or more the vessels or craft involved, or
103    structure, floating or otherwise, or any substance or thing damaged are the property in whole or in part of the same Owners and/or Charterers and/or
104    Operators and/or Lessees or are leased, controlled and/or in the custody of the same Owners and/or Charterers and/or Charterer and/or Lessees, all
105    questions of responsibility and amount of liability being left to the decision of a single Arbitrator, if the parties can agree on a single Arbitrator, or failing
106    such an agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of Underwriters,
107    the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference and the decision of such single or any two of such three
108    Arbitrators appointed as above, to be final and binding.
109    Provided always that this Collision and Tower's Liability clause shall in no case extend to any sum or sums which the Assured and/or any of its
110    affiliated and/or subsidiary and/or interrelated companies and/or the Surety may become liable to pay or shall pay:
111     (a) for loss, damage or expense to vessel(s) in tow owned (other than vessel(s) bareboat chartered to others), bareboat chartered, managed or operated
112    by the Assured and/or any of its affiliated and/or subsidiary and/or interrelated companies, or to cargo, owned by the Assured and/or any of its
113    affiliated and/or subsidiary and/or interrelated companies, on board vessel(s) in tow of the Vessel, or
114     (b) in consequence of, with respect to, or arising out of:
115         (1) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;
116         (2) cargo, baggage or engagements of the Vessel;
117         (3) loss of life, personal injury or illness;
118         (4) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever
119    Provided, further that exclusion (b)(4) shall not apply to actual physical loss of or damage to such substances (if liability therefor is otherwise covered
120    under this Policy) except to the extent that such loss or damage arises out of any action taken to avoid, minimize or remove any discharge, spillage,
121    emission or leakage described in exclusion (b)(4).

## GENERAL AVERAGE AND SALVAGE

122    General Average and Salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of
123    affreightment, payable at the Assured's election either in accordance with York-Antwerp Rules 1974 or with the Laws and Usages of the Port of San
124    Francisco Provided always that when adjustment according to the laws and usages of the port of destination is properly demanded by the owners of the
125    cargo, General Average shall be paid accordingly.
126    In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in part or in whole to the Assured and/or any of
127    its affiliated and/or subsidiary and/or interrelated companies, the value of such services (without regard to the common ownership or control of the vessels)
128    shall be ascertained by arbitration in the manner provided for under the Collision and Tower's Liability clause in this Policy, and the amount so awarded so
129    far as applicable to the interest hereby insured shall constitute a charge under this Policy.
130    When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution
131    (except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the vessel which the
132    Amount Insured Hereunder bears to the contributory value, and if, because of damage for which the Underwriters are liable as Particular Average, the value

Case 3:20-cv-00270-HRH   Document 1-1   Filed 10/20/20   Page 18 of 62

## PROTECTION AND INDEMNITY CLAUSES

1   Assured _____ *As Declared* _____

3   Address _____ *As Declared* _____

5   Loss, if any, payable to _____ *As Declared* _____

7   From the __*As Declared*__ day of __*As Declared*__, 20____   Beginning and ending at *As Declared* Standard

8   Until the __*As Declared*__ day of __*As Declared*__, 20____   time at place of issuance.

9   Amount hereby insured $ __*As Declared*__ Rate __*Agreed*__ % Premium $ __*As Declared*__

10  In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company

11  hereby undertakes to pay up to the amount hereby insured and in conformity with lines 5 and 6 hereof,

12  such sums as the assured, as owner of the _____ *As Declared* _____

13  shall have become legally liable to pay and actually have paid on account of:

14     Loss of life of, or injury to, or illness of, any person;

15     Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of,

16     injury to, or illness of any member of the crew of the vessel named herein;

17     Loss of, or damage to, or expense in connection with any fixed or movable object or property of whatever

18     nature;

19     Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such

20     removal is compulsory by law; provided, however, that there shall be deducted from such claim the value

21     of any salvage recovered from the wreck by the assured;

22     Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation

23     of same, for the violation of any of the laws of the United States, or of any state thereof, or of any

24     foreign country; provided, however, that this Company shall not be liable to indemnify the assured against

25     any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the

26     assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a

27     violation of any such laws;

28     Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim

29     or suit against the assured arising out of a liability or an alleged liability of the assured covered by this

30     policy.

31  Notwithstanding the foregoing this Company will not pay for:

32     The first $ __*As Declared*__ of claims covered by lines 14, 15, 16, 28, 29 and 30 nor for the first $ __*As Declared*__

33     of claims covered by any other parts of this policy, but, in no event shall the deductible exceed $ __*As Declared*__

34     each occurrence. (For the purpose of this clause, each occurrence shall be treated separately, but a series

35     of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)

36     Loss of, or damage sustained by the vessel named herein or her tackle, apparel, furniture, boats, fittings,

37     equipment, stores, fuel, provisions or appurtenances;

38     Loss resulting from cancellation of charters, non-collectibility of freight, bad debts, insolvency of agents

39     or others, salvage, general average, detention, loss of use or demurrage of the vessel named herein;

40     Any loss, damage, expense or claim with respect to any vessel or craft in tow of the vessel named herein

41     and/or cargo thereon; provided this exclusion shall not apply to salvage services rendered in an emergency

42     to a ship or vessel in distress, or to loss of life and/or injury to, or illness of any person;

43     Any claim for loss of, damage to, or expense in respect of cargo on board the vessel named herein;

44     Any claim arising directly or indirectly under the Longshoremen's and Harbor Workers' Compensation

45     Act or any workmen's compensation act of any state or nation;

46     Any liability assumed by the assured beyond that imposed by law; provided however that if by agreement,

47     or otherwise, the assured's legal liability is lessened, then this Company shall receive the benefit of

48     such lessened liability.

49     Any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise,

50     civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, seizure,

51     arrest, restraint or detainment, or the consequences thereof or of any attempt thereat; or sustained in

52     consequence of military, naval or air action by force of arms' or sustained or caused by mines or torpedoes or

53     other missiles or engines of war, whether or enemy or friendly origin; or sustained or caused by any weapon

54     of war employing atomic fission or atomic fusion or radioactive material; or sustained in consequence

55     of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement,

56     including embarking or disembarking troops or material of war in the immediate zone of such engagement;

57     and any such loss, damage and expense shall be excluded from this policy without regard to whether

58     the assured's liability in respect thereof is based on negligence or otherwise, and whether in time of peace

60          Any loss, damage, expense or claim collectible under the        *As Declared*
61          form of policy, whether or not the vessel named herein is actually covered by such insurance and regardless
62          of the amount thereof.
63      Warranted that in the event of any occurrence which could result in a claim under this policy the assured
64      promptly will notify this Company upon receiving notice thereof and forward to this Company as soon
65      as practicable all communications, processes, pleadings or other legal papers or documents relating to such
66      occurrence.
67      Whenever required by this Company, the assured shall aid in securing information and evidence and in obtaining
68      witnesses and shall cooperate with this Company in the defense of any claim or suit or in the appeal from any
69      judgment.
70      This Company shall have the option of naming the attorneys who shall represent the assured in the prosecution
71      of defense of any litigation or negotiations between the assured and third parties concerning any claim covered
72      by this policy, and shall have the direction of such litigation or negotiations. If the assured shall fail or refuse
73      to settle any claim as authorized by this Company, the liability of this Company shall be limited to the
74      amount for which settlement could have been made. The assured shall at the option of this Company
75      permit this Company to conduct, with an attorney of this Company's selection, at this company's cost and expense
76      and under its exclusive control, a proceeding in the assured's name to limit the assured's liability to the extent,
77      and in the manner provided by the present and any future statutes relative to the limitation of a shipowner's
78      liability.
79      Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of
80      any one occurrence is limited to the amount hereby insured. (For the purpose of this clause each occurrence
81      shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated
82      as due to that occurrence.)
83      The assured shall not make any admission of liability, either before or after any occurrence which could
84      result in a claim for which this Company may be liable. The assured shall not interfere in any negotiations
85      of this Company, for settlement of any legal proceedings in respect of any occurrence for which this
86      Company may be liable under this policy; provided, however, that in respect of any occurrence likely to give rise
87      to a claim under this policy, the assured is obligated to and shall take such steps to protect his and/or the
88      Company's interests as would reasonably be taken in the absence of this or similar insurance.
89      Upon making payment under this policy this Company shall be vested with all of the assured's rights of recovery
90      against any person, corporation, vessel or interests and the assured shall execute and deliver such instruments
91      and papers as this Company shall require and do whatever else is necessary to secure such rights.
92      No action shall lie against this Company for the recovery of any loss sustained by the assured unless such
93      action is brought within one year after the entry of any final judgment or decree in any litigation against the
94      assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is
95      brought within one year from the date of the payment of such claim.
96      No claim or demand against this Company under this policy shall be assigned or transferred, and no person
97      shall acquire any right against this Company by virtue of this insurance without the express consent of this
98      Company.
99      It is expressly understood and agreed if and when the assured has any interest other than as a shipowner in
100     the vessel named herein, in no event shall this Company be liable hereunder to any greater extent than if the
101     assured were the sole owner and entitled to petition for limitation of liability in accordance with present and
102     future law.
103     Where the assured is, irrespective of this policy, covered or protected against any loss or claim which would
104     otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by
105     this Company on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise.
106     The navigation limits in the policy covering the hull, machinery, etc. of the vessel named herein are considered
107     incorporated herein.
108     This insurance shall be void in case the vessel named herein, or any part thereof, shall be sold, transferred or
109     mortgaged, or if there by any change of management or charter of the vessel, or if this policy be assigned or
110     pledged, without the previous consent in writing of this Company.
111     Either party may cancel this policy by giving ten days' notice in writing; if at the option of this Company
112     pro rata rates, if at the request of the assured short rates, will be charged-and arrival.

113             SPECIAL CONDITIONS —— WARRANTIES —— ENDORSEMENTS, ETC.

114     Attached to and made a part of Policy No. _*As Declared*_ of the _____*As Declared*_

11/1/02

## INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.      In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

        1.1      ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

        1.2      the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

        1.3      any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

        1.4      the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

_____

**CL 356 A**

EXHIBIT 1

10/11/03

## INSTITUTE CYBER ATTACK EXCLUSION CLAUSE

1.1    Subject only to clause 1.2 below, in no case shall this insurance
       cover loss damage liability or expense directly or indirectly caused
       by or contributed to by or arising from the use or operation, as a
       means for inflicting harm, of any computer, computer system,
       computer software programme, malicious code, computer virus or
       process or any other electronic system.

1.2    Where this clause is endorsed on policies covering risks of war,
       civil war, revolution, rebellion, insurrection, or civil strife arising
       therefrom, or any hostile act by or against a belligerent power, or
       terrorism or any person acting from a political motive, Clause 1.1
       shall not operate to exclude losses (which would otherwise be
       covered) arising from the use of any computer, computer system or
       computer software programme or any other electronic system in the
       launch and or guidance system and/or firing mechanism of any
       weapon or missile.

_____

CL 380

EXHIBIT 1

## FLEET CLAUSE

As a matter of convenience, the Policy is issued covering the vessels hereunder. However, each vessel is to be deemed a separate interest, separately insured, in all respects as if a separate Policy for the amount set opposite the name of each vessel were issued for her and the Policy is to be read and applied accordingly. The insurance for one vessel is not applicable to any other and the amount of insurance written opposite each vessel is the limit of coverage for her.

If there be any provision or language elsewhere in this Policy reading or indicating other than what is specified in the preceding paragraph, said preceding paragraph shall apply.

## G.I.S. BROKER'S CANCELLATION CLAUSE

Notwithstanding anything to the contrary in the policy and/or binder to which this is attached, it is hereby agreed by and between the Assured and Assurer(s) as follows:

If payment is not made by the Assured within ten (10) days after attachment of the insurance(s), or in the event the Assurer(s) shall have agreed to accept deferred payments, or premium is financed with a premium financing company, if any payment of premium(s) and/or installment(s) is not made on the day agreed / required, this policy may be cancelled by the Assurer(s) and/or Global Insurance Specialists, LLC giving to the Assured named herein ten (10) days written notice of such cancellation. A certified letter and/or facsimile notice by or through Global Insurance Specialists, LLC to said Assured at his last known address shall constitute a complete notice as required under this clause.

However, in the event mortgagee's, loss payees and/or other parties in interest are entitled to notice of cancellation, Global Insurance Specialists, LLC shall complete the cancellation of this insurance contract by mailing and/or faxing notice thereof pursuant to the terms of the policy to such entities.

Such cancellation shall be without prejudice to premiums earned and due for the period the policy is in force.

In the event of a total loss covered hereunder, all future installments shall immediately become due and payable and the Underwriters shall be entitled to take credit therefore.

## MARITIME LIEN FOR UNPAID PREMIUM AND COMMISSION

Underwriters and Global Insurance Specialists, LLC in agreeing to arrange and issue this insurance, continue to rely in part on the credit of each and every vessel insured hereunder. No provision contained herein shall be construed as a manifestation of Underwriters or Broker's intent to forego their right to enforce a maritime lien against said vessel(s), but on the contrary, expressly reserve that right.

Further, it is agreed that any unpaid and due premiums and/or commissions under this policy may first be deducted from any and all returns and any and all claims for loss or damage that are recoverable under this policy. Any such sums deducted are to be paid to Underwriter's and Global Insurance Specialists, LLC proportionately as their respective interests in said premiums and commissions may appear.

## POLLUTION EXCLUSION CLAUSE

Notwithstanding anything to the contrary this Policy does not insure against any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.

*American Institute*
S.R. & C.C. Endorsement (Hulls)
September 8, 1959

87 B-46
(Revised)

To be attached to and form a part of Policy No. <u>(as attached)</u> of <u>(as attached)</u>

Insuring <u>(as attached)</u>

In consideration of an additional premium, as provided below, this insurance is extended to cover additional risks, from and after <u>(as attached)</u>

In accordance with the following clause: -

"This insurance also covers damage to or destruction of the property insured directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention of loss of use, and free from all loss damage or expenses caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.

Notwithstanding the exclusion in the F.C. & S. Clause in the within policy "vandalism," "sabotage," and "malicious mischief," as used herein shall be constructed to include willful or malicious physical injury to or destruction of the described property caused by acts committed by an agent of any Government party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

Until further notice the Assured shall pay for the additional protection afforded by the above clause, an additional premium of <u>(as attached)</u> percent. The Underwriters have the right nevertheless to change this rate at any time on 15 days written notice to the Assured; but the Assured shall have the option to cancel this endorsement as of the time when such change of rate would take effect, provided previous notice of such cancellation be given to the Underwriters. The rate may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the vessel or elsewhere, may be threatened or actually exist either at the time when such notice is given or when it takes effect.

All other terms and conditions remaining unchanged.

Dated___ <u>(as attached)</u> Signed____ <u>(as attached)</u>

## AUTOMATIC ACQUISITION CLAUSE

This policy is extended to cover automatically any vessel(s) which the Assured, (and/or affiliated, subsidiary, or interrelated companies) may purchase, bareboat character or acquire provided that the Assured will notify Underwriters as soon as possible, but no later than 30 days after such purchase, bareboat charter or acquisition and pay an additional premium from the date of each purchase, bareboat charter or acquisition. The Underwriters' Limit of Liability under this Automatic Acquisition Clause shall not exceed the highest valued vessel scheduled.

## PUNITIVE DAMAGE EXCLUSION

Notwithstanding anything to the contrary contained in this policy, it is hereby expressly understood and agreed that this policy excludes all liability of any nature for fines, penalties, punitive or exemplary damages, including treble damages resulting from multiplication of compensatory damages.

## U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

# AIMU

**CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC
EXCLUSION CLAUSE**
**(March 1, 2003)**

**This clause shall be paramount and shall override anything contained in this insurance
inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly
caused by or contributed to or arising from an actual or threatened act involving a chemical,
biological, bio-chemical or electromagnetic weapon, device, agent or material when used in
an intentionally hostile manner.

## OCCUPATIONAL DISEASE EXCLUSION CLAUSE

This policy does not apply to any actual or alleged liability arising out of occupational disease.

The words "occupational disease", wherever used in this policy, shall mean any injury, including death, sickness, disease or disability, defined as occupational disease in any workers' compensation, unemployment compensation or disability benefits, laws, statues or regulations of any jurisdiction in which the claim is made or the occupational disease arose.

## ASBESTOS EXCLUSION

It is hereby understood and agreed that this insurance shall not apply to and does not cover any actual or alleged liability whatsoever for any claim or claims in respect of loss or losses directly or indirectly arising out of or resulting from or in consequence of asbestos in whatever form or quality.

## THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES
## UNDER ALASKA RULE OF CIVIL PROCEDURE 82
## COMBINED "B" & "C" FORM

In any suit in Alaska in which we have right or duty to defend an insured within the limits of liability, or in which we have neither a right nor a duty to provide a defense but we have agreed to indemnify an insured for costs of defense within the limits of liability, our obligation under the applicable coverage to pay attorney fees taxable as costs against the insured is limited as follows:

Alaska Rule of Civil Procedure 82 provides that if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82. We provide coverage for attorney fees for which you are liable under Alaska Rule of Civil Procedure 82 subject to the following limitation:

> *If the limit of liability of the applicable coverage is $1,000,000 or more, we will not pay any combination of judgment or claim settlement and attorney fees under Alaska Rule of Civil Procedure 82 that exceeds the limit of liability of the applicable coverage.*

> *If the limit of liability of the applicable coverage is less than $1,000,000, we will not pay more than the greater of:*
> *(1) that portion of any attorney's fees that is calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b) (1) to the limit of liability of the applicable coverage; or*
>
> *(2) $10,000.*

*The limitation means the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.*

### EXAMPLE 1:
The attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b) (1) are:

20% of the first $25,000 of a judgment;
10% of the amounts over $25,000 of a judgment.

Therefore, if a court awards a judgment against you in the amount of $1,250,000, in addition to the amount you would be liable for attorney fees of $127,500 under Alaska Rule of Civil Procedure 82 (b) (1), calculated as follows:

| | |
|---|---|
| 20% of $25,000 | $  5,000 |
| 10% of $1,225,000 | $122,500 |

Total Award $1,250,000          Total Attorney Fees $127,500

Page 1 of 3

If the limit of liability of the applicable coverage is $1,000,000, we would pay $1,000,000 of the $1,250,000 award, less the costs incurred defending you, and none of the attorney fees under Alaska Rule of Civil Procedure 82(b) (1).

You would be liable to pay, directly and without our assistance, the remaining judgment in excess of the remaining policy limit plus the $127,500 attorney fees under Alaska Rule of Civil Procedure 82.

## EXAMPLE 2:

The attorney fees provided by the schedule for contested cases under Alaska Rule of Civil Procedure 82(b) (1) are:

> 20% of the first $25,000 of a judgment
> 10% of the amounts over $25,000 of a judgment.

Therefore, if the court awards a judgment against you in the amount of $650,000, in addition to that amount you would be liable under Alaska Rule of Civil Procedure 82(b) (1) for attorney fees of $67,500, calculated as follows:

| | |
|---|---|
| 20% of $25,000 | $ 5,000 |
| 10% of $625,000 | $ 62,500 |

Total Award  $650,000    Total Attorney Fees $ 67,500

If the limit of liability of the applicable coverage is $500,000, we would pay $500,000 of the $650,000 award, less the costs incurred defending you, and $52,500 of the attorney fees under Alaska Rule of Civil Procedure 82(b)(1), calculated as follows:

| | |
|---|---|
| 20% of $25,000 | $ 5,000 |
| 10% of $475,000 | $ 47,500 |

Total Limit of Liability $500,000    Total Attorney Fees Covered    $52,500

You would be liable to pay, directly and without our assistance, the judgment in excess of the remaining policy limit plus the remaining $15,000 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.

## EXAMPLE 3:

The attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) are:
> 20% of the first $25,000 of judgment;
> 10% of the amounts over $25,000 of a judgment.

Page 2 of 3

Therefore, if a court enters a judgment against you in the amount of $500,00, in addition to that amount you would be liable for attorney fees of $52,500 under Alaska Rule of Civil Procedure 82(b)(1), calculated as follows:

| | |
|---|---|
| 20% of $ 25,000 | $ 5,000 |
| 10% of $475,000 | $47,500 |

| | |
|---|---|
| Total Award $500,000 | Total Attorney Fee $ 52,500 |

If the limit of liability of the applicable coverage is $50,000, we would pay $50,000 of the $500,000 award less the costs incurred defending you, and $10,000 of the attorney fees under Alaska Rule of Civil Procedure 82(b)(1), calculated as follows:

| | |
|---|---|
| 20% of $25,000 | $ 5,000 |
| 10% of $25,000 | $ 2,500 |

| | |
|---|---|
| Minimum Limit: | $10,000 |

| | | | |
|---|---|---|---|
| Total Limit of Liability | $50,000 | Total Attorney Fees Covered | $10,000 |

You would be liable to pay, directly and without our assistance, the judgment in excess of the remaining policy limit plus the remaining $42,500 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.

Page 3 of 3

## ABSOLUTE TERRORISM EXCLUSION CLAUSE

This policy excludes any loss, damage, liability or expense arising from:

a)   terrorism; and or

b)   steps taken to prevent, suppress, control or reduce the consequences of any actual, attempted, anticipated, threatened, suspected or perceived terrorism.

For the purpose of this clause, "terrorism" means any act(s) of any person(s) or organization(s) involving:

(i)   the causing, occasioning or threatening of harm of whatever nature and by whatever means;

(ii)   putting the public or any section of the public in fear, in circumstances in which it is reasonable to conclude that the purpose(s) of the person(s) or organization(s) concerned are wholly or partly of a political, religious, ideological or similar nature.

(iii)   Acts certified as "Acts of Terrorism" by the U.S. Secretary of the Treasury in concurrence with the U.S. Secretary of State and U.S. Attorney General pursuant to the Terrorism Risk Insurance Act of 2002 (as amended).

## FOLLOWING CLAUSE

This coverage to follow the terms as set out by the lead underwriter and to follow the settlement of the lead in every respect. However, following underwriters insofar as their proportions of coverage are concerned individually and separately, reserve the right to honor a claim which the lead underwriter may dispute and/or make ex-gratia payments insofar as their respective interests are concerned.

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FAULKNER WALSH CONSTRUCTORS, H2W CONSTRUCTORS, INC. | ) ) ) |
| and, | ) ) |
| FOUNDATION SERVICES, INC. | ) ) |
| Defendants. | ) ) ) |

**COPY**
Original Received

**NOV - 3 2016**

Clerk of the Trial Courts

Case No. 3AN-16- 9863CI

## COMPLAINT

The State of Alaska, Department of Natural Resources ("the State") by and through

the Office of the Attorney General, states and alleges the following for its complaint against

Faulkner Walsh Constructors, H2W Constructors, Inc. and Foundation Services, Inc.:

## PARTIES

1.     The State is a sovereign state of the United States and is the rightful owner of the

tideland, shoreland and/or submerged lands (the "Lands") underneath waters comprising the

Kuskokuak Slough (the "Slough"), anabranch of the Kuskokwim River, a navigable river

near Bethel, Alaska.

2.     The Lands are managed on behalf of the State by its agency, the Department of

Natural Resources.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 2
Exhibit A; Page 39 of 62

3.    Upon information and belief, Defendant Foundation Services, Inc. ("Foundation") is, and at all material times was, an Alaska corporation, conducting business throughout Alaska with a registered address of 225 Main Street, Bethel, Alaska.

4.    Upon information and belief, Defendant H2W Constructors, Inc. ("H2W") is, and at all material times was, an Alaska corporation, conducting business throughout Alaska with a registered address of 11711 South Gambell Street, Anchorage, Alaska.

5.    Upon information and belief, Defendant Faulkner Walsh Constructors ("Faulkner") is, and at all material times was, an Alaska business entity conducting business throughout Alaska as a with a registered address of 11711 South Gambell Street, Anchorage, Alaska.

6.    Upon information and belief, each Defendant is the alter ego, co-conspirator and/or agent of all the other Defendants and that each ratified the other Defendants' conduct in the furtherance of such agency or action.

7.    Foundation, H2W and Faulkner shall hereinafter be referred to, collectively, as "Defendants."

8.    Upon information and belief, at all material times Defendants owned and/or operated, for profit, the barge "Delta Chief," on the Slough.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under AS 22.10.020(a) and (b).

10.    Venue is proper in this court under AS 22.10.030 and Alaska Rule of Civil Procedure 3(c), as Defendants H2W and Faulkner are domiciled in Anchorage, Alaska, and most of the witnesses are located in Anchorage, Alaska.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

*SOA, DNR v. Faulkner, et al.*               Case No. 3AN-16-_____CI
Complaint                                    Page 2 of 8
Case 3:20-cv-00270-HRH   Document 1-1   Filed 10/20/20   Page 40 of 62
Exhibit A, Page 40 of 62
EXHIBIT 2



## RELEVANT FACTS

11.     Upon information and belief, at all material times, Defendants owned and operated the barge "Delta Chief."

12.     On or around October 4, 2012, the Delta Chief sank in the shallow waters of the Slough and currently sits on the State's Lands without the State's permission (the "Incident").

13.     Following the Incident, the Delta Chief has, at all material times, impeded navigation and travel through and/or on the Slough.

14.     Defendants were informed by the State, immediately following the Incident, that the Delta Chief was trespassing on its Lands.

15.     On or around March 5, 2013, in response to demands from the State, Defendants submitted a plan for removal of the Delta Chief from the State's Lands.

16.     On or around March 8, 2013, Defendant Faulkner's Chief Financial Officer, Allen Hippler, represented to the State that Defendant Faulkner would remove the Delta Chief from the Lands by Spring of 2013, presumably following breakup of the ice which covers the Slough in winter months.

17.     In response to the foregoing representation by Defendants, the State issued a land use permit to Defendants to remove the Delta Chief from its Lands.

18.     On or around March 27, 2013, Mr. Hippler again reassured the State that the Delta Chief would be removed from the Lands by Spring of 2013.

*SOA, DNR v. Faulkner, et al.*
Complaint

EXHIBIT 2

19.     On or around April 3, 2013, Defendant Faulkner Walsh's project manager, Gerald

Korthuis, spoke with Alaska Department of Environmental Conservation employee

Robert Carlson and represented that the Delta Chief would be removed from the lands that

same week.

20.     Despite the foregoing representations, the Delta Chief was never removed.

21.     Following the foregoing representations, Defendants discontinued all communication

with the State.

22.     The Delta Chief has remained on the Lands under the Slough through the present

day.

23.     Defendants, through their inaction and refusal to continue communication with the

State, intend for the Delta Chief to remain on the Lands.

## FIRST CAUSE OF ACTION
### Negligence

24.     The State incorporates by reference the above paragraphs.

25.     Defendants, as owners and operators of the Delta Chief, had a duty to the State and

others to operate and/or maintain the Delta Chief in a reasonable, prudent manner and with

reasonable care.

26.     During and preceding the Incident, Defendants breached their duty by operating

and/or maintaining the Delta Chief in a negligent manner, causing it to sink in the Slough,

coming to rest on and causing damage to State Lands.

27.     As a direct and proximate result of Defendants' negligence, the State has suffered

damages in an amount to be proven at trial.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 2

## SECOND CAUSE OF ACTION
### Negligent Trespass

28.    The State incorporates by reference the above paragraphs.

29.    At all material times leading up to and following the Incident, the State had title to and possession of the Lands.

30.    Entry of the Delta Chief onto the Lands was caused by the negligent and/or reckless actions and/or omissions of Defendants.

31.    Entry of the Delta Chief onto the Lands was done without permission from the State.

32.    Entry of the Delta Chief is the direct and proximate cause of continuing harm to the State's Lands.

33.    Since the Incident, the Delta Chief has remained on the State's Lands without the State's consent and in a harmful manner, accruing damages to the State on a daily basis since the Incident occurred.

34.    The State has suffered and continues to suffer damages to its Lands as a result of Defendants' trespass in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Intentional Trespass

35.    The State incorporates by reference the above paragraphs.

36.    Following the Incident, Defendants made false and/or misleading statements to the State, promising removal of the Delta Chief from its Lands.

37.    Upon information and belief, Defendants, despite these statements, did not intend to remove the Delta Chief from the Lands.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

*SOA, DNR v. Faulkner, et al.*                          Case No. 3AN-16-_____CI
Complaint                                                        Page 5 of 8
Case 3:20-cv-00270-HRH   Document 1-1   Filed 10/20/20   Page 43 of 62
Exhibit A, Page 43 of 62

38.     Following the Incident and at all material times, Defendants intended to leave the Delta Chief on the State's Lands without permission and in continuing trespass on the Lands.

39.     Defendants' refusal to remove the Delta Chief from the Lands, despite the knowledge that it was in continuing trespass, was outrageous and with reckless indifference to the interests of the State.

40.     Since the Incident, the Delta Chief has remained on the State's Lands without the State's consent and in a harmful manner, accruing damages to the State on a daily basis since the Incident occurred.

41.     As a direct and proximate result of the aforementioned intentional, continuing trespass, the State suffered and continues to suffer damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Public Nuisance

42.     The State incorporates by reference the above paragraphs.

43.     The Incident and subsequent acts and omissions of Defendants created a common law and/or statutory (AS 38.05.128) public nuisance through the unreasonable interference with the rights of the State, impeding navigation in the Slough in addition to damage and/or contamination of the Lands.

44.     As a direct and proximate result of the aforementioned public nuisance, the State has been harmed in an amount to be proven at trial.

*SOA, DNR v. Faulkner, et al.*          Case No. 3AN-16-_____CI
Complaint                                              Page 6 of 8

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

## FIFTH CAUSE OF ACTION
### Natural Resource Damages – AS 46.03.780

45.    The State incorporates by reference the above paragraphs.

46.    Pursuant to AS 46.03.780, Defendants are strictly liable to the State for the damages
caused to the Lands in an amount equal to the sum of money required to restore the Lands to
their condition preceding the Incident, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Violation of AS 30.30.010

47.    The State incorporates by reference the above paragraphs.

48.    Defendants abandoned the Delta Chief and its payload in the Lands in violation of
AS 30.30.010, et. seq.

49.    Defendants are therefore liable for the costs of removal of the Delta Chief and its
payload abandoned in violation of state law, or alternatively, should be enjoined to remove
the vessel, as set forth below.

## SEVENTH CAUSE OF ACTION
### Injunctive Relief

50.    The State incorporates by reference the above paragraphs.

51.    The State, as set forth above, the Delta Chief has remained on the State's Lands
since the Incident without the State's consent and in a harmful manner, accruing damages to
the State on a daily basis since the Incident occurred.

52.    The State respectfully requests this Court enjoin Defendants from the continuing
trespass of its barge, Delta Chief, and order its immediate removal from the Lands at
Defendants' expense.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

## PRAYER FOR RELIEF

**WHEREFORE, the State prays for judgment as follows:**

53. For injunctive relief, as set forth above;

54. For damages in an amount to be proven at trial, plus interest;

55. For costs of suit incurred herein;

56. For pre-judgment interest allowed by law at the maximum allowable legal rate;

57. For punitive damages pursuant to AS 09.17.020;

58. For attorney's fees and costs; and

59. For such other and additional relief as may be just and proper.

DATED November 3, 2016.

JAHNA LINDEMUTH
ATTORNEY GENERAL

By:

Peter J. Caltagirone
Assistant Attorney General
Alaska Bar No. 1605028

Andrew R. Naylor
Assistant Attorney General
Alaska Bar No. 1210074

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

*SOA, DNR v. Faulkner, et al.*
Complaint

Case No. 3AN-16-_____CI
Page 8 of 8

Case 3:20-cv-00270-HRH   Document 1-1   Filed 10/20/20   Page 46 of 62
EXHIBIT 2
Exhibit A, Page 46 of 62

THOMAS KENT MORRISON
Partner
504.584.9243
morriok@phelps.com

September 15, 2017

22099-63

Mr. Brent R. Cole **By E-Mail**
Law Office of Brent R. Cole, P.C.
821 N. Street, Suite 208
Anchorage, Alaska 99501-2136
brent@akcolelaw.com

     Re:    Faulkner Walsh / M/V DELTA CHIEF; Date of Loss: October 5, 2012

Dear Mr. Cole:

     We write in response to your August 28, 2017, correspondence regarding the coverage afforded to Faulkner Walsh Constructors ("Faulkner" or the "Assured") under Policy No. GIS-12-080-HP (the "Policy"), in connection with the loss of the DELTA CHIEF and the related suit to compel wreck removal recently filed by the Alaska Department of Natural Resources.

## THE CLAIM

### The Incident

     According to a United States Coast Guard 2692 Report of Marine Accident, Injury or Death completed by Faulkner Walsh on October 5, 2012, the DELTA CHIEF, a 175' long steel barge built in 1951, was located on the Kuskokwim River near Kwetheluk, Alaska when it quickly sank while under tow.

### The Complaint

     On November 3, 2016, the Department of Natural Resources for the State of Alaska ("Plaintiff") filed a Complaint against H2W Constructors, Inc., Foundation Services, Inc., and Faulkner Walsh (collectively "Defendants") in the Superior Court for the Third Judicial District, Anchorage, Alaska. Plaintiff alleges that "each Defendant is the alter ego, con-conspirator and/or agent of all the other Defendants."

     Plaintiff's claims arise out of the October 5, 2012, sinking of the DELTA CHIEF. Plaintiff alleges that "Defendants were informed by the State, immediately following the incident, that DELTA CHIEF was trespassing on its Lands" and that "in response to demands from the State" Defendants submitted a plan for removal on March 5, 2013. Plaintiff alleges that "on or around March 8, 2013, Defendant Faulkner's Chief Financial Officer, Allen Hippler, represented to the state that Defendant Faulkner would remove the DELTA CHIEF . . . by Spring of 2013." In response to this representation the "State issued a land use permit to Defendants to remove the DELTA CHIEF." Plaintiff alleges that on March 27 and April 3, 2013,

Canal Place , 365 Canal Street, Suite 2000   New Orleans, Louisiana 70130-6534 , 504.566.1311 , 504.568.9130 Fax , phelpsdunbar.com

Faulkner Walsh representatives reassured the State that Defendants would remove the DELTA CHIEF by Spring 2013. However, the DELTA CHIEF was never removed and "following the foregoing representations, Defendants discontinued all communication with the State." Plaintiffs assert that "Defendants, through their inaction and refusal to continue communication with the State, intend for the DELTA CHIEF to remain on [the State's] Lands."

Plaintiff alleges a negligence claim against Defendants for "operating and/or maintaining the DELTA CHIEF in a negligent manner, causing it to sink . . . coming to rest on and causing damage to State Lands." Plaintiff alleges a negligent trespass claim against Defendants for "negligent and/or reckless acts and omissions" which have caused the DELTA CHIEF to remain "on the State's Lands without the State's consent and in a harmful manner, accruing damages to the State on a daily basis" since the date of the sinking. Plaintiff also alleges an intentional trespass claim for Defendants' "refusal to remove the DELTA CHIEF from the [State's] Lands despite the knowledge that it was continuing trespass." Additionally, plaintiff alleges statutory public nuisance, environmental degradation, and payload abandonment claims against Defendants. Plaintiff seeks injunctive relief to compel removal of the DELTA CHIEF, compensatory damages, interest, attorney's fees and costs, and punitive damages.

Faulkner Walsh assigned defense counsel for its own account on the same day suit was filed.

**Underwriters' Notice**

The loss of the DELTA CHIEF was not reported to International Specialty, Inc., until February 11, 2013. At that time, Jalene Reed, an account manager with MCM, reported that Faulkner Walsh had just advised MCM that the vessel was lost in October 2012. As a result, nearly four months passed between the date of the loss and notification of same.

Reed indicated that Faulkner Walsh "had not performed the requirement for making sure the hull on [the] vessel was watertight" prior to its departure and sinking. As such, Reed stated that "we do not expect there to be coverage for the wreck removal on this vessel"... but "did want you to be made aware that this has happened." Reed reported that Faulkner Walsh had advised that they did not plan on attempting to salvage the barge until the Summer of 2013. Importantly, no notice of claim was made under the policy.

As noted earlier herein, much transpired not only between the October 5, 2012 loss of the DELTA CHIEF and the February 11, 2013 correspondence from Jolene Reed, but thereafter as well. Indeed, representatives of Faulkner Walsh were in repeated contact with representatives of the State of Alaska about the recovery of the DELTA CHIEF. After allegedly failing to follow through with purported plans for recovery of the vessel, and repeated orders to move forward by the State of Alaska, Faulkner Walsh was sued by the State of Alaska on November 3, 2016. Despite all of that activity, Underwriters were not placed on notice that Faulkner Walsh intended to submit a claim under the policy and did not receive notice of the suit until May 9, 2017.

### DELTA CHIEF Condition and Valuation Survey

Prior to the incident, a Condition and Valuation Survey was performed on the DELTA CHIEF by Jack McFarland of Alaska Marine Surveyors, Inc. McFarland reportedly attended the vessel on June 6, 2011, and issued his survey report on July 28, 2011.

After cataloging his external and internal inspections which revealed relatively significant wear and tear to the vessel, McFarland concluded that the barge was "well used and has been minimally maintained." He opined that the barge was usable, but required "some repairs to ensure it is watertight." Even after repairs, he recommended that it be restricted to riverway use due to its condition if utilized for commercial trade. He further reported that it could be transported to a shipyard via coastwise travel within 12 miles of shore, but only in "light" condition (not loaded) and only after temporary repairs were made to stop or minimize water ingress. Finally, he concluded that the vessel should be dry docked with the hull and deck made watertight, zincs installed, and the bottom coated.

## THE POLICY

Faulkner Walsh (including subsidiaries and/or affiliated/associated companies) is the named assured under policy number GIS-12-080-HP. The policy is subscribed to by National Casualty Company at 50%, Atlantic Specialty Insurance Company at 25%, AGCS Marine Insurance Company at 15%, and Zurich American Insurance Company at 10%. The declarations page reflects a schedule of vessels as follows:

**Vessels:**

1.   "War Horse" 1970 Tug

2.   "Frances Snow" 1957 Tug

3.   "David Nook" 1970 Freight Barge

4.   "Cornell #10" 1940 Freight Barge

5.   "Afognak 22" 1946 Freight Barge

6.   "Delta Viking" (Ex. "ZB-19") 1963 Barge

7.   "Delta Chief" circa 1963 Barge

8.   "Mac" 1993 Push Boat

9.   "Centaur" (Ex. "Chena") 1945 (rebuilt 1959/1978) Steel Tug

With regard to the sums insured, the policy provides as follows:

**Sum Insured: Hull & Machinery**

Exhibit 3

1.    $300,000 – "War Horse"

2.    $220,000 – "Frances Snow"

9.    $130,000 – "Centaur"

No other vessels covered for Hull & Machinery coverage.

With regard to Protection and Indemnity limits of liability, the policy provides:

**Limit of Liability:**

Protection & Indemnity

$1 million any one accident or occurrence, each vessel

Under the subtitle Deductibles, the policy provides as follows:

**Deductibles:**

Protection & Indemnity

$10,000 all P & I claims, each and every claim except $20,000 * as respects claims for Primary Collision, Sue & Labor, General Average, Salvage and Removal of Wreck as respects the vessels "David Nook", "Cornel #10", "Afognak 22", "Delta Viking", "Delta Chief" and "Mac" only.

Under the subtitle Conditions, the policy provides in pertinent part as follows:

**Conditions:**

Pacific Post Tug & Barge Form

Protection & Indemnity SP-38

P&I SP 38 Lines 60 –62 specifically amended to include Primary Collision, Primary General Average, Salvage and Removal of Wreck and Primary Sue & Labor Expenses as respects "David Nook," "Cornel #10," "Afognak 22," "Delta Viking", "Delta Chief" and "Mac" (after applicable deductible is met). These coverages are Primary and not in excess of the hull values. Please see attached Manuscript Endorsement #1 for further policy terms in this regard.

Under the subtitle Navigation Warranty, the policy provides as follows:

**Navigation Warranty:**

"War Horse", "Frances Snow", "Centaur" and "Delta Chief"

Coastal and Inland Waters of Western and Central Alaska, including Nome to Cook Inlet, and including Yukon, Kuskokwim River System, and/or held covered.

Under the subtitle Information, the policy requires as follows:

**Information:**

Recommendation compliance letters to be completed/signed with regard to the "Frances Snow," "Delta Chief" and "Centaur" prior to these vessels operating. With regard to the "Delta Chief" – confirmation that the hull is watertight via signed recommendation letter, survey addendum, letter or e-mail from the original surveyor, Jack McFarland, will be deemed acceptable in lieu of the recommendation to drydock this vessel.

The policy provides, in pertinent part as follows under Manuscript Endorsement #1:

**Manuscript Endorsement #1**

...

With respect to the below listed vessels, Protection & Indemnity insurance provided by this policy is extended to indemnify the Assured for all sums which the Assured may become obligated to pay for liabilities under the Collision and Towers' Liability Clause, General Average and Salvage Clause, and the Sue and Labor Clause contained in the Pacific Coast Tug/Barge Form (1979) (even in the absence of Hull and Machinery coverage for these vessels). But this insurance is warranted free from claims hereunder unless claims in respect of any one loss, accident or occurrence exceed the below listed "Deductible", but not in excess of the below listed "Limit of Liability Any One Loss or Occurrence."

| Vessel Name | Deductible | Limit of Liability Any One Loss or Occurrence |
|---|---|---|
| "David Nook" | $20,000 | $980,000 |
| "Cornell #10" | $20,000 | $980,000 |
| "Afognak 22" | $20,000 | $980,000 |
| "Delta Viking" | $20,000 | $980,000 |

| "Delta Chief" | $20,000 | $980,000 |
| "Mac" | $20,000 | $980,000 |

Protection and Indemnity coverage is provided under an SP-38 form. With regard to wreck removal, the policy provides as follows:

> In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured and in conformity with lines 5 and 6 here of, such sums as he assured, as owner of the As Declared shall have become legally liable to pay and shall have paid on account of:

> Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the assured;

> Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation of same, for the violation of any of the laws of the United States, or of any state thereof, or of any foregoing country; provided, however, that this Company shall not be liable to indemnify the assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the assured or his managing officers or agents to exercise the highest degree of diligence to prevent a violation of any such laws.

The Protection and Indemnity clauses in the policy require prompt notice, stating:

> Warranted that in the event of any occurrence which could result in a claim under this policy, the assured promptly will notify this Company upon receiving notice thereof and forward to this Company as soon as practicable all communications, processes, pleadings or other legal papers or documents relating to such occurrence.

The Policy excluded coverage in the following pertinent circumstances:

Pollution Exclusion Clause

> Notwithstanding anything to the contrary this Policy does not insure against any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or

Exhibit A; Page 52 of 62

Exhibit 3

potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.

Punitive Damage Exclusion

Notwithstanding anything to the contrary contained in this policy, it is hereby expressly understood and agreed that this Policy excludes all liability of any nature for fines, penalties, punitive or exemplary damages, including treble damages resulting from multiplication of compensatory damages.

## DECLINATION OF COVERAGE

As noted above, plaintiff's Complaint arises from the October 5, 2012, sinking of the DELTA CHIEF and Faulkner Walsh's failure to remove the wreck from the riverbed managed by the Alaska Department of Natural Resources. The Policy provides wreck removal coverage for the DELTA CHIEF under the SP-38 Form. The Policy requires that wreck removal be compulsory by law in order for the assured to enjoy coverage under the Policy. Plaintiff alleges that it demanded that Faulkner Walsh remove the wreck immediately after its sinking. Thus, wreck removal would be covered under the Policy in the absence of any exclusionary language or other applicable policy provisions voiding coverage.

**1.     Declination for Failure to Comply with Condition Precedent to Coverage**

The Policy conditions coverage for the DELTA CHIEF on the assured obtaining written confirmation that the DELTA CHIEF's hull is watertight prior to operating that vessel. The Condition and Valuation Survey performed by Jack McFarland also makes it clear that the vessel was not watertight and was not to be used commercially until confirmation was obtained that it was watertight. As confirmed by Reed's statement, Faulkner Walsh failed to perform an inspection to ensure the hull was watertight prior to its departure for commercial purposes and subsequent sinking. As such, coverage is denied due to Faulkner Walsh's failure to satisfy that condition precedent to coverage. Moreover, coverage is denied for Faulkner Walsh's violation of its obligation to maintain the vessel in a seaworthy condition.

**2.     Declination for Failure to Provide Prompt Notice of Claim**

The DELTA CHIEF sank on October 5, 2012. Underwriters were not notified of the event until February 11, 2013. Even then, however, Underwriters were advised that a claim was not being made under the policy. Faulkner Walsh subsequently was ordered by the State of Alaska to remove the vessel and was involved in extensive negotiations with the State of Alaska to do so all without notice to Underwriters. On November 3, 2016, the Alaska Department of Natural Resources filed suit against Faulkner Walsh, but notice of that suit was not made to Underwriters until May 9, 2017. The Policy requires Faulkner Walsh to forward "as soon as practicable all communications, processes, pleadings or other legal papers or documents relating to such occurrence." Faulkner Walsh has failed to provide notice as required by the Policy.

Exhibit 3
Exhibit A; Page 53 of 62

September 15, 2017
Page 8

Accordingly, Underwriters decline coverage due to Faulkner Walsh's failure to provide prompt notice of a claim as required by the Policy.

**3.    Declination of Coverage for Environmental Degradation**

Plaintiff's Complaint alleges strict liability for damages related to environmental degradation pursuant to Alaska Statute 46.03.780. The Policy expressly excludes insurance for "any loss, damages, cost, liability, expense, fine or penalty of any kind or nature" imposed upon the assured "directly or indirectly, in consequence of" potential discharge or emission "into the seas, waters, land or air" of oil or other substances "of any kind or nature whatsoever." Thus, Plaintiff's allegation of environmental degradation is not covered under the Policy.

**4.    Declination of Coverage for Fines, Penalties and Punitive Damages**

Plaintiff's prayer for relief seeks "punitive damages pursuant to Alaska Statute 09.17.020." The Policy contains language excluding coverage for "all liability of any nature for fines, penalties, punitive or exemplary damages, including treble damages resulting from multiplication of compensatory damages." Thus, the Policy does not provide coverage for the punitive damages sought by Plaintiff.

The SP-38 Form makes clear that Underwriters "shall not be liable" for any "fines or penalties resulting directly or indirectly from the failure, neglect, or default of the assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation" of state or federal law. Plaintiff's intentional trespass claim, which alleges that "Defendants made false and/or misleading statements to the State," also is not afforded coverage under the Policy.

**CONCLUSION**

Given all of the foregoing, Underwriters deny coverage for the claim in its entirety. Moreover, because no coverage exists, Underwriters have no duty to defend Faulkner Walsh against Plaintiff's suit.

Underwriters' coverage position in respect of Policy discussed in this letter is based solely on information that has been provided or otherwise has been made available to date. If Faulker Walsh has any additional information which you believe Underwriters should consider, please immediately furnish it to the undersigned for our review. No waiver of the right to assert additional policy defenses is intended, and any such waiver is specifically denied. Any actions that have or will be taken in connection with this claim should not be construed as a waiver of any right of Underwriters to invoke the terms, conditions and exclusions of the Policy, all of which actions taken on behalf of Underwriters are done entirely without prejudice.

If you have any questions regarding this letter, please do not hesitate to contact me.

September 15, 2017
Page 9

       With kind regards, I remain

                    Very truly yours,

                    Thomas Kent Morrison

TKM/DJS/pmc

cc:    Faulkner Walsh Constructors
       P.O. Box 233929
       Anchorage, AK 99523

PD.22274981.1
Exhibit A; Page 55 of 62

Exhibit 3

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FOURTH JUDICIAL DISTRICT AT BETHEL

| | |
|---|---|
| STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| FAULKNER WALSH CONSTRUCTORS, H2W CONSTRUCTORS, INC., and FOUNDATION SERVICES, INC, | ) ) ) ) ) |
| Defendants. | ) |

Case No. 4BE-17-00064 CI

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. INTRODUCTION

The Court makes the following proposed Findings of Fact and Conclusions of Law. Argument of counsel is not requested, but parties have fifteen (15) days from the date of this order to file any objection to proposed findings and conclusions.

This case involves a barge that sank in state waterways in 2012 and which its owners have not removed. The State sued for its removal and, barring that remedy, for monetary damages equivalent to the cost of removal.

Partial summary judgment was previously granted. After a bench trial on December 18, 2019, the Court now awards the State a judgment for $4,234,414.00 plus costs and fees for the reasons set forth below.

EXHIBIT 4
Exhibit A, Page 56 of 62

As noted in the Court's order denying a motion to change venue, "[t]he Delta Chief, a barge owned and operated by the Defendants... sank in the Koskokuak Slough near Bethel, AK on October 4, 2012.

The Court previously issued an order based upon two unopposed motions for summary judgment dated April 18, 2018 that determined:

(1)     The State owns the submerged lands where the Delta Chief is located.

(2)     The Delta Chief is owned by the Defendants Faulkner Walsh Constructors, H2W Constructors, Inc., and Foundation Services, Inc. ("Defendants").

(3)     The State is entitled to an order ejecting Defendants and the Delta Chief from State land.

(4)     The Defendants have and continue to violate AS 30.30 *et. al.* and commit and continue to commit intentional trespass by leaving the abandoned and/or derelict vessel in State waters.

(5)     The Defendants have and continue to create a public nuisance by failing to remove the vessel.

(6)     The Defendants are strictly liable for all natural resources damages they have caused by refusing to remove the vessel.

(7)     The Defendants Foundation Services, Inc. and H2W Constructors, Inc., as partners of a partnership, are jointly and severally liable for the actions of Faulkner Walsh Constructors.

EXHIBIT 4
Exhibit A; Page 57 of 62

## II.   FINDINGS OF FACT

At the bench trial in December, 2019, the State called two witnesses, Andrew Gusty and Thomas Ulrich. The Defendant called no witnesses, filed no brief, and asked for no continuance.

A.   **From the Testimony of Andrew Gusty**

1.   Andrew Gusty worked as a pilot for Faulkner Walsh Constructors since July 2010. He grew up in a tug business that operated in Southwest Alaska, including in the area of the sinking of the Delta Chief.

2.   He served as a pilot for the tug pulling the Delta Chief in October of 2012. The tug was the Francis Snow. Gusty's job in part required him to advise the tug's captain, David Van Buskirk, on the navigation of the tug and the Delta Chief on its trip from Birch Tree to Bethel. Buskirk was also an employee of the Defendants.

3.   The Delta Chief left Birch Tree, near Aniak, Alaska with a full gravel payload and construction equipment.

4.   The trip back to Bethel initially occurred without event on October 3, 2012.

5.   The Delta Chief traveled down the river for the majority of the day of October 3rd without event.

6.   The captain had the crew dock in a deeper water. Gusty recommended that it should be docked a half mile further in shallow waters because of changing weather condition.

7.   Captain Van Buskirk parked the Delta Chief about twelve feet from a cut back and tied the tug to a couple of trees. The water beneath the barge was about thirty feet deep.

EXHIBIT 4
Exhibit A; Page 58 of 62

8.      The winds picked up, blowing from the north, with 30 mile-per-hour gusts.

9.      As a result of wind and waves and the position of the barge as chosen by the captain, the bow sank and efforts to prevent it from going under water were unsuccessful.

10.     By morning's light, the Delta Chief was sunk onto the State's submerged lands. The gravel payload was lost.

11.     Defendants' headquarters was notified of the loss, as evidenced by the Alaska Department of Environmental Conservation Situation Report that is part of Exhibit 3.

12.     The Delta Chief was not lifted after at least two attempts by the Defendants to do so. It remains submerged at the location where it sank.

13.     If the captain, an agent of Defendants, had not ignored the reasonable warning of Mr. Gusty, the Delta Chief would not have sunk on or about October 4, 2012 and would have likely made it back safely to Bethel, Alaska.

B.      **From the testimony of Thomas Ulrich.**

1.      Thomas Ulrich is qualified under Rule of Evidence 702 as an expert on removing and salvaging of vessels from remote locations, including in Alaska. Mr. Ulrich testified to means of removal and the efforts he undertook to determine the required means and cost of removal of the Delta Chief from the submerged lands of the Kwethluk River.

2.      A multi-beam bathymetric survey of the Delta Chief was completed in September of 2018.

EXHIBIT 4

3.    The budgetary estimate for the salvage and disposal of the Delta Chief is divided into four constituent parts: (1) Project Planning and Procurement; (2) Project Mobilization; (3) Project Operations; and (4) Project Demobilization. The damages resulting from the negligent and strict liability actions of Defendants' are $4,234,414.00, plus or minus five percent. Mr. Ulrich testified to these damages, the methods of their calculation, and circumstances particular to the location of the Delta Chief and the mobilization of a recovery effort. He testified to any remaining remediation that may be required. He also testified to his supplemental report, detailing contributors to the high cost of recovery and salvage, on the same.

4.    Prior efforts of the Defendants to salvage the vessel and its load were largely unsuccessful. Therefore, the means for removal Mr. Ulrich testified to are reasonable in light of all circumstances and so too are his cost estimates.

5.    Best and reasonable practices, described in Mr. Ulrich's testimony, for removal and salvage of the Delta Chief appropriately determine the cost estimates.

6.    Government interests, including the interest in safe navigation, continue to be infringed until the Delta Chief is removed.

7.    The State's damages of $4,234,414.00, plus or minus five percent, were proximately caused by Defendants' negligent and strict liability actions.

## III.    CONCLUSIONS OF LAW

Based on the evidence presented at the bench trial, the Court makes the following conclusions of law.

1.    The Defendants owed the State and its residents the duty to navigate the waters of Alaska reasonably and safely.

EXHIBIT 4
Exhibit A; Page 60 of 62

2.  The Defendants breached that duty when they or their agents failed to follow reasonable precautions at the time of anchoring the Delta Chief for the night.

3.  That negligence is the factual proximate cause of damages to the submerged lands of the Kwethluk River and to the safe navigation interests the State protects. As such, the State has established all elements of a negligence claim, including damages. *Regner v. N. Star Volunteer Fire Dep't*, 323 P.3d 16, 21 (Alaska 2014).

4.  As already found by this court, principles of strict liability damages are also at play, because Defendants have created and continue to create a public nuisance.

5.  Because Defendants' past efforts of removing and salvaging the Delta Chief were not successful, a simple order of ejectment will not suffice.

6.  Rather, monetary damages caused by Defendants negligent and strict liability actions are required.

7.  The State has proved by a preponderance of the evidence that those damages, to remove and salvage the Delta Chief, total $4,234,414.00.

8.  Per the expert's approximation of costs, The State may seek an additional recovery of up to five percent ($211,720.70), if these damages, as estimated by the State's expert, are low.

9.  Statutory pre and post judgment rates of interest shall accrue.

10.  The State is the prevailing party for purposes of award of attorneys' fees and costs.

EXHIBIT 4
Exhibit A; Page 61 of 62

DATED: March __, 2020.

RAYMOND FUNK
SUPERIOR COURT JUDGE PRO TEM